872 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deborah AVERY, Personal Representative of the Estate of Guy
Avery, Plaintiff-Appellant,
v.
Kevin SUMMERS, Individually and in his representative
capacity as Chief of Police for the Village of Grass Lake,
and
Mark Siegle, Individually, Defendants-Appellees.
 No. 88-1397.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a civil rights action in which the appellant, who was the plaintiff below, asserts principally that the district court erred in refusing to enforce an alleged settlement and in refusing to give a requested jury instruction. We find no basis for disturbing the district court's conclusion that no settlement agreement was ever reached. Any error in refusing to give the jury instruction in question was harmless beyond a reasonable doubt, and we shall therefore affirm the judgment entered on the jury's verdict in favor of the defendants.
 
 
 2
 * * *
 
 
 3
 * * *
 
 
 4
 On Friday, September 6, 1985, plaintiff's decedent, a man named Guy Avery, pedaled his moped to a cemetery near Grass Lake, Michigan. There he rested, lying in a grassy area outside the cemetery. Kevin Summers, chief of the Grass Lake Police Department, saw Mr. Avery lying in the grass and stopped to question him. Chief Summers thought Mr. Avery might be a "walkaway" from one of the penal institutions in the county. Refusing to answer the policeman's questions, Mr. Avery mounted his moped and began pedaling toward Grass Lake. Chief Summers called for a backup and followed in his squad car.
 
 
 5
 State Trooper Mark Siegle responded to the call and pulled his car in front of Mr. Avery's moped in an attempt to block his path. Trooper Siegle grabbed at Mr. Avery or the moped, but Avery eluded him and brandished a utility knife before running away on foot.
 
 
 6
 The two policemen gave chase. After being joined by other officers, they cornered Mr. Avery on a crowded street in the town's business district. Mr. Avery swung his knife at Chief Summers, and Trooper Siegle thereupon shot Mr. Avery three times. He was dead on arrival at the hospital approximately 30 minutes later.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Mr. Avery's estate brought suit in federal court under 42 U.S.C. Sec. 1983. In a conference held just before the start of trial, the defendants offered to settle the case for $75,000. The plaintiff's attorney rejected the offer, saying, "[W]e're so far apart, I'd seem to be wasting my voice." A week later, after the plaintiff had rested but before the conclusion of the defendants' proofs, the defendants again offered to settle the action for $75,000. This settlement discussion occurred in chambers, off the record, on Friday, February 26, 1988. There is a dispute as to how the plaintiff responded to the offer, the defendants maintaining that the offer was rejected and the plaintiff maintaining that it was neither accepted nor rejected. The district judge, for his part, said later that "I clearly had the feeling throughout that, that the plaintiff was, was not really not [sic] interested in settling for the amount that was offered by the defendant." The trial continued.
 
 
 10
 On Monday, February 29, after the completion of the defendants' case and after the plaintiff's rebuttal witnesses had testified, the plaintiff attempted to accept the defendants' offer. The defendants indicated that the offer was no longer on the table, but they nonetheless offered to pay $75,000 if the plaintiff would sign a settlement agreement acknowledging that the defendants "acted appropriately at all times and at no time violated any state or federal law." The plaintiff refused to sign such an acknowledgement.
 
 
 11
 The following morning the plaintiff represented to the court that a settlement had been reached and asked the court to enforce the agreement. The defendants reiterated their willingness to settle the case if the plaintiff would stipulate that the defendants had acted appropriately and lawfully. The plaintiff insisted that she had accepted an earlier offer, one which did not require her to acknowledge the defendants' innocence.
 
 
 12
 The court concluded that there had been no agreement, and the case was submitted to the jury. The jury returned a verdict in favor of both defendants.
 
 
 13
 Although courts have the power to enforce settlement agreements, a court may not exercise that power unless it is able to conclude that agreement has been reached on all material terms. Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir.1988). In reviewing a district court's finding that an agreement was or was not reached, we apply the clearly erroneous standard. See id.
 
 
 14
 We find no clear error here. The original offer was rejected out of hand; that much, at least, is plainly reflected in the record. The second offer was made off the record, with only the attorneys and the trial judge present. The judge was of the opinion that the second offer never ripened into a mutual agreement. The judge was there, and we were not; we are not prepared to second-guess the trial court on this matter.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 The plaintiff also urges us to find that the district court erred in failing to instruct the jury that a seizure occurred, as a matter of law, when Trooper Siegle first stopped Mr. Avery. We need not reach that issue, for the shooting occurred after Mr. Avery had assaulted both Trooper Siegle and Chief Summers with a knife. There was no evidence from which the jury could have found that Mr. Avery suffered any cognizable injury prior to that time. If the district court erred in failing to give the requested instruction, the error was harmless beyond a reasonable doubt.
 
 
 18
 We find the plaintiff's other assertions of error to be without merit.
 
 
 19
 The judgment of the district court is AFFIRMED.